Filed 2/20/25  P. v. White CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID DANIEL WHITE,<br><br>    Defendant and Appellant. | D083236<br><br><br><br>(Super. Ct. No. SCD238601) |


APPEAL from an order of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Ava R. Stralla, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Over a roughly 12-hour period in 2011, defendant David Daniel White and codefendant Terrence Jarvis, both gang members, committed a series of violent crimes involving multiple victims. White ultimately pleaded guilty to five charges including attempted murder and was sentenced to state prison.

Nearly a decade later, after significant changes to California's homicide statutes, White filed an unsuccessful petition for resentencing pursuant to Penal Code section 1172.6 seeking to vacate his conviction for attempted murder.[1] The trial court denied relief following an evidentiary hearing, finding beyond a reasonable doubt that White aided and abetted Jarvis's attempted murder of the victim with an intent to kill. We conclude that substantial evidence supports the trial court's conclusion and, accordingly, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The crime spree in this case began one afternoon with the beating of a former gang member in front of his grandmother's house on 57th Street in San Diego. Video evidence showed that White began the assault. That evening, Jarvis and White robbed one female victim; 90 minutes later they attempted to rob a second. In each instance, White drove the vehicle from which Jarvis exited, armed with a shotgun, to assault the victims and attempt to take their property.

Within minutes of the attempted robbery and only a short distance away, a male college student G.R. was brutally attacked and suffered severe head trauma. Compelling circumstantial evidence suggested that Jarvis hit

---

[1] All statutory references are to the Penal Code. At the time White filed his petition, it was authorized by then-section 1170.95. That section has since been renumbered as section 1172.6. To avoid confusion, we use the current number throughout this opinion.

2

him multiple times with the butt of the shotgun. Less than 30 minutes after this assault, Jarvis and White used credit cards belonging to G.R. at two different gas stations.

A few hours later, White and Jarvis returned to the home of the grandmother of the first victim, where the first assault took place. Both defendants fired multiple rounds through the windows of the grandmother's house.

Charged with numerous crimes, White agreed to plead guilty to premeditated attempted murder (§§ 664, 187, subd. (a)), assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)), robbery (§ 211), attempted robbery (§§ 664, 211), and shooting at an inhabited dwelling (§ 246). The inquiry regarding the factual basis for the plea was perfunctory. The court asked whether "all parties stipulate to the preliminary hearing as a factual basis?" Both White and the deputy district attorney agreed.[2] White was then sentenced to an indeterminate term of 7 years to life plus 15 years, 8 months in prison.

Nearly a decade later in 2022, White filed a petition for resentencing under section 1172.6, seeking to invalidate his conviction for attempted murder. The People stipulated that White had established a prima facie case for relief, and the matter proceeded to an evidentiary hearing in November 2023.

---

[2] With this cursory foundation, we assume the parties were merely stipulating that the evidence presented at the preliminary hearing was sufficient to provide a valid factual basis for a conviction, and not that White was agreeing that everything testified to at the hearing was true.

At the outset of the hearing, the court indicated it had received as evidence and would consider the preliminary hearing transcript[3] and the record of conviction, including the plea agreement. The parties also agreed that the court should receive and review four additional exhibits. The first was a stipulation regarding shotgun shell casings recovered from a residence on 57th Street (the scene of both the initial assault and the shooting incident involving an inhabited dwelling) as including DNA from G.R., the victim of the attempted murder. The remaining three were transcripts of testimony by three witnesses at the trial of codefendant Jarvis. These included the neighbor who discovered G.R., the emergency room doctor who treated him, and G.R.'s mother.

The trial court denied White's resentencing petition, finding "based on all of his conduct before, during, and after this crime spree" that White aided and abetted the attempted murder with a specific intent to kill.

## DISCUSSION

By his section 1172.6 petition, White seeks to vacate his conviction for attempted murder. Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Thus, the parties' stipulation that White had established a prima facie case for relief was necessarily based on the possibility that at the time of his plea, White could have been convicted of attempted murder on a natural and probable consequences theory. At the evidentiary hearing, the People bore the burden of proving that White was guilty of attempted murder without resort to that now-invalid doctrine.

---

[3] The parties acknowledged that section 1172.6 itself generally prohibits consideration of otherwise inadmissible hearsay testimony elicited at the preliminary hearing. (§ 1172.6, subd. (d)(3); see § 872, subd. (b).)

Because there was no evidence that he inflicted any of the physical blows, the prosecution had to show that White aided and abetted Jarvis's attempted murder *and* shared his intent to kill the victim.[4]  Considering the evidence of White's conduct "before, during, and after" the series of crimes he and Jarvis committed, the trial court found beyond a reasonable doubt that White possessed the intent to kill G.R.  On appeal, White contends there was no substantial evidence to support the trial court's conclusion.

Prevailing on a sufficiency-of-the-evidence challenge is a difficult task. With considerable deference to the trial court, we review the entire record to determine if it contains substantial evidence—"evidence which is reasonable, credible, and of solid value"—that would permit a rational trier of fact to find the defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  We must "view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Reilly*

---

4    For the defendant to be "guilty of a crime based on aiding and abetting that crime, the People must prove that:

> "1.  The perpetrator committed the crime;
> "2.  The defendant knew that the perpetrator intended to commit the crime;
> "3.  Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
> "and
> "4.  The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
> "Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."  (CALCRIM No. 401.)

(1970) 3 Cal.3d 421, 425.) Circumstantial evidence often provides adequate support for factual findings, particularly with respect to a defendant's state of mind.[5] (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 (*Nguyen*).)

Here, the circumstantial evidence was sufficient to allow the trial court to conclude that White assisted in Jarvis's beating of G.R. with an intent to kill. The evidence indicated that together, White and Jarvis confronted three victims within a short period of time for the purpose of robbing them. The modus operandi in each instance was the same. White drove the vehicle and stopped near the victim; Jarvis got out, threatened the victim with a shotgun, and took property.

We do not know why Jarvis chose to beat G.R. but did not injure either of the first two victims. Whatever the reason, Jarvis administered a brutal beating. The trauma surgeon who treated G.R. at the hospital testified it was the worst case of blunt force head trauma he had seen in his 42-year career, involving four significant injuries caused by at least three different blows from a hard instrument. Both sides agreed that the entire incident happened quickly—apparently in less than a minute. Combined with the manner of the first two robberies, this suggests White watched the beating from a short distance away and did nothing to stop it or summon assistance for the victim. Rather, he and Jarvis left G.R. for dead and simply continued their course of

---

[5] We do not rely on the People's argument that there is direct evidence of White's mental state based on his admission that he committed *premeditated* attempted murder. An aider and abettor can be subject to an enhanced penalty based on the premeditation of the direct perpetrator, even if the aider and abettor did not premeditate a killing. (*People v. Lee* (2003) 31 Cal.4th 613, 616, 624.) In effect, White argues he pleaded guilty to premeditated attempted murder because he aided and abetted an armed robbery, the natural and probable consequences of which was an attempted murder that *Jarvis* premeditated. A plea of guilty to premeditated attempted murder is not necessarily inconsistent with this theory.

illegal conduct.  A short time later, White drove to two different gas stations where the victim's credit card was used.

The evidence also indicated that White did not merely accompany Jarvis as a passive accomplice.  He personally engaged in violent conduct both before and after the beating of G.R.  Earlier in the day, White initiated the physical assault on a former gang member in which Jarvis also participated.  And approximately two hours after the assault on G.R., White and Jarvis fired gunshots through the window of the house on 57th Street where they believed the former gang member was staying.  This is far more than mere presence at the scene of a crime and/or the failure to take action to prevent it.  (See *People v. Nguyen* (1993) 21 Cal.App.4th 518, 529–530 ["Mere presence at the scene of a crime is not sufficient to constitute aiding and abetting, nor is the failure to take action to prevent a crime, although these are factors the jury may consider in assessing a defendant's criminal responsibility."]; see also *Nguyen, supra,* 61 Cal.4th at p. 1054 [presence at the scene is a factor, among others, to be considered in deciding whether a defendant aided and abetted the commission of a crime].)  The trial court could fairly infer that White endorsed Jarvis's violent actions and shared with him the intent to kill G.R.

## DISPOSITION

The order denying White's section 1172.6 petition is affirmed.

DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


RUBIN, J.

7